**GULF OIL CORPORATION,**
Plaintiff-Appellee,

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

**EXXON CORPORATION and Atlantic Richfield Company,**
Plaintiffs-Appellees,

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

**MOBIL OIL CORPORATION and Mobil Oil Exploration & Producing Southeast Inc., Plaintiffs-Appellees,**

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

**SHELL OIL COMPANY,**
Plaintiff-Appellee,

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

**INTER NORTH, INC., et al.,**
Plaintiffs-Appellees

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

**CONOCO, INC., Plaintiff-Appellee,**

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

**TEXGAS CORPORATION and Allied Corporation, Plaintiffs-Appellees,**

v.

**DEPARTMENT OF ENERGY, et al.,**
Defendants-Appellants.

No. 3–26.

Temporary Emergency Court of Appeals.

Argued Nov. 13, 1981.

Decided Jan. 25, 1982.

As Amended Feb. 2, 1982.

Don W. Crockett, Dept. of Energy, Washington, D. C. (Stuart E. Schiffer, Acting Asst. Atty. Gen., Civ. Div., and Dina R. Lassow, and Stephen E. Hart, Dept. of Justice, and John P. McKenna, Robert J. Wehrle-Einhorn, and Frank E. Massengale, Dept. of Energy, Washington, D. C., were with him on the brief), for defendants-appellants.

M. W. Parse, Jr., Fulbright & Jaworski, Houston, Tex., for Exxon Corp., argued on behalf of refiner-appellees. With him on the brief for Refiner-Appellees were Charles E. Cheek, Tulsa, Okl., and Robert F. Ochs, Houston, Tex., and Charles C. Hairston, Tulsa, Okl., of counsel, for Gulf Oil Corp.

Jerry E. Smith, and A. Frank Koury, Fulbright & Jaworski, Houston, Tex., and

Barbara Finney and Edward de la Garza, Houston, Tex., of counsel, for Exxon Corp.

David L. Roll, Samuel T. Perkins, Charlene Barshefsky, and Seth Goldberg, Steptoe & Johnson, Washington, D. C., and Richard C. Morse, Los Angeles, Cal., and Arthur J. Wright, Dallas, Tex., of counsel, for Atlantic Richfield Co.

R. Bruce McLean, Daniel Joseph, Harry R. Silver, and Joseph T. Casey, Jr., Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., and, of counsel, Charles S. Lindberg, Donald E. Marquardt, Gail F. Schulz, Mark J. Forsch, New York City, and E. S. McCrum, New Orleans, La., for Mobil Oil Corp. and Mobil Oil Exploration & Producing Southeast, Inc.

William Simon, William E. Wickens, Frederick S. Frei, Howrey & Simon, Washington, D. C., and, of counsel, William G. Riddoch, Houston, Tex., for Shell Oil Co.

Donald B. Craven, Robert K. Huffman, and James B. Altman, Miller & Chevalier, Washington, D. C., and, of counsel, David M. Francis, and Mona A. Yoes, Houston, Tex., for Conoco, Inc.

James V. Carroll, III, Houston, Tex., Bruce R. Coulombe, Washington, D. C., Edith H. Jones, Marcia A. Graham, Houston, Tex., Andrews, Kurth, Campbell & Jones, Washington, D. C., and, of counsel, Timothy T. West, Houston, Tex., for Texgas Corp. and Allied Corp.

Richard G. Morgan, O'Connor & Hannan, Washington, D. C., for InterNorth, Inc., argued on behalf of gas processors-appellees. With him on the brief for gas processors-appellees were Donald S. Arbour, Martha Priddy Patterson, and Christina W. Fleps, O'Connor & Hannan, Washington, D. C., and, of counsel, Dean Wallace, Frank J. Duffy, Michael P. Moran, Omaha, Neb., for plaintiff-appellee, InterNorth, Inc.

Before CHRISTENSEN, JAMESON and BROWN, Judges.

WESLEY E. BROWN, Judge.

These are appeals from three judgments entered by the District Court on May 8,

1981, sustaining plaintiff-appellees' motions for summary judgment upon a determination that Subpart K of the Mandatory Petroleum Price Regulations, 10 C.F.R. §§ 212.161 et seq., permitted interaffiliate transfers of natural gas liquids and liquid products to be treated as "first sales," and so entitled to price adjustments provided in 10 C.F.R. § 212.164.

These judgments were entered pursuant to the opinion of the District Court reported as *Amoco Production Company v. Department of Energy*, 512 F.Supp. 815 (D.C.Del. 1981), which disposed of eight separate actions filed by seventeen firms.[1] These firms are referred to in this litigation as the "refiner-processors," and "gas processor-marketers." The "gas processors" are affiliated with separately incorporated marketers which purchase natural gas liquids and liquid products from affiliated processors, and others, and which resell these at wholesale and at retail. These firms do not engage in crude oil refining. On the other hand, the "processor-refiners" are crude oil refiners which also operate gas processing plants, and which may also have extensive marketing operations.

The "processor-refiners" who appear as Appellees here are Gulf Oil Corporation, Exxon Corporation, Atlantic Richfield Company, Mobil Oil Corporation and Mobil Oil Exploration & Producing Southeast, Inc., Shell Oil Company, Conoco, Inc., and, with respect to the period before February 1, 1979, Texgas Corporation and Allied Corporation.

The "gas processors" who appear as Appellees are InterNorth, Inc. (Northern Gas Products Company, Northern Propane Gas Company, and UPG, Inc.) and, with respect to the period after January 31, 1979, Texgas Corporation and Allied Chemical Corporation.[2]

The issue presented on this appeal is whether the District Court correctly held that transfers of natural gas liquids (NLGs) and natural gas liquid products (NGLPs) by processor refiners and gas processors to affiliated marketers constituted "first sales" under 10 C.F.R. Part 212, Subpart K.

The trial court reviewed the nature of the industry involved in this case. Briefly summarized, it may be said that NGLs are a liquified hydrocarbon mixture extracted from "wet" gas at gas plants, primarily composed of propane, butanes, natural gasolines and ethanes. NGLs may be fractionated to produce separate NGLPs—that is, propane, butane, etc. Many gas processors have facilities to produce both NGLs and NGLPs. Gas processors obtain wet gas from producers or royalty owners, compensating them by payment of a portion of the value of the NGLs after they are extracted from the stream. After processing, propane is generally sold to marketers to resell to end users for commercial and residential use. Butane, natural gasoline, and ethane are generally sold for use as refinery feedstocks.

The 1973 Phase IV price regulations for the petroleum industry, which froze prices at May 15, 1973 levels, governed prices to be charged by refiners for their products. These regulations were later construed to apply to sales of NGLs and NGLPs by gas processors to marketers. See *Nat. Helium Corp. v. Federal Energy Administration*, 569 F.2d 1137 (Em.App.1977); *Mobil Oil Corp. v. Federal Energy Administration*, 566 F.2d 87 (Em.App.1977). These regulations recognized transfer prices between affiliated companies for the purpose of calculating a refiner's increased costs. 10 C.F.R. §§ 212.83(b), 212.83(e).

In September, 1974, the FEA proposed a new Subpart K to the regulations which would apply specifically to the gas process-

---

1. We are advised that Amoco Production Co. and Amoco Oil Co. subsequently dismissed their action pursuant to a settlement with the Department of Energy. The Amoco companies are not parties to these appeals.

Further background on these cases may be found in *Northern Natural Gas v. U.S. Depart-* *ment of Energy*, 464 F.Supp. 1145 (D.Del.1979) and *Amoco Production Co. v. U.S. Department of Energy*, 469 F.Supp. 236 (D.Del.1979).

2. The District Court rendered separate judgments for Conoco, for the processor-refiners, and for the gas processors.

ing industry. The proposed regulations were to apply "to the first sale of natural gas liquids by a producer or royalty owner, and to all sales, including any first sale, by a gas plant operator." 39 Fed.Reg. 32718, at 32730, (proposed § 212.161). At this time the agency was concerned about the consequences of the May 15, 1973 freeze date upon gas processors, since NGL prices were unusually low on that date, and it was felt that some price incentive would be needed to ensure continued production and new production of propane.

As found by the trial court, the most important part of the Subpart K proposal is found in this preamble:

> The special regulations being proposed in this notice for gas plants will also apply to gas plants owned or controlled by refiners, for purposes of determining the appropriate transfer price to the refiner .... The "special propane rule" ... is proposed to be kept in effect for refiners, except to the extent that the proposed new natural gas liquids price regulations would determine the transfer prices to refiners from affiliated gas plants. 39 Fed.Reg. 32720.

On December 19, 1974, the FEA issued final Subpart K regulations, to become effective January 1, 1975.

In view of the language found in Subpart K and the history of its development, we agree with the finding of the trial court that transfers from all gas processors to affiliated entities qualify as "first sales," and are eligible for adjusted first sale prices set out in the regulations.

In the first instance, the scope of Subpart K is set out in this language, at 10 C.F.R. § 212.161(a): [3]

> § 212.161 Applicability and relationship to other subparts.

> (a) Scope. This subpart applies to all sales of natural gas liquids and natural gas liquid products, *including transfers between affiliated entities*, by all firms, including gas plant operators, producers of natural gas, natural gas royalty owners, and refiners except sales by resellers or retailers, which are subject to Subpart F of this part. (Emphasis supplied).[4]

Section 212.163 of Subpart K, which applies only to natural gas liquids and products, sets out the general price rule to the effect that gas plant operators may not charge "any class of purchaser" a price in excess of prices set on May 15, 1973, except as provided in Subpart K. Section 212.164, in turn, provided for an "adjusted" May 15, 1973 first sale price:

> (a) Natural gas liquid products. For purposes of determining lawful prices of natural gas liquid products in a first sale pursuant to this subpart, a firm may use, ... (in lieu of the May 15, 1973 price) prices of not more than $.08.5 per gallon for propane, not more than $0.09 per gallon for butane, and not more than $.10 per gallon for natural gasoline.

Similar provisions for natural gas liquids were provided in § 212.164(b), and, for new gas plants erected after January 1, 1975, the base prices were set at $.12 per gallon for propane, $.12.5 per gallon for butane, and $.13.5 per gallon for natural gasoline. § 212.164(c).

While it was provided that if the May 15, 1973, actual selling price was under the base prices of 8.5, 9, and 10 cents per gallon, a gas processor would be entitled to use the adjusted "first sale price" provided in § 212.164, the agency decided to make the use of that section elective since in some

---

**3.** As originally enacted, the provisions of Subpart K were numbered from §§ 212.141 to 212.-150. In February, 1975 they were renumbered as §§ 212.161 to 212.170. Our references will be to sections, as renumbered.

**4.** Subpart E applies only to refiners, 10 C.F.R. § 212.81:

> This subpart applies to each sale of a covered product which is purchased or refined by a

refiner, except as provided in Subparts F and K.

> Subpart F applies to resellers and retailers, 10 C.F.R. § 212.91:

> This subpart applies to each sale of a covered product (other than the first sale of crude petroleum) by resellers, reseller-retailers, and retailers, and to each sale of crude petroleum (other than the first sale) by a refiner.

cases, a gas processor might have had actual May 15, 1973 first sale prices which exceeded those set out in § 212.164. This was so that "all processors of natural gas will have margins comparable to historical levels—thus providing a continuing incentive to produce natural gas liquid products." 39 Fed.Reg. at 44409.

The term "first sale" under Subpart K is defined as follows in § 212.162:

"First sale" means, with respect to natural gas liquids or natural gas liquid products, the first transfer for value to a class of purchaser for which a fixed price per unit of volume is determined.

It should be noted at this point that the *proposed* definition of "first sale" was slightly different. 39 Fed.Reg. at 32730:

... (w)ith respect to natural gas liquids, the first transfer for value to a class of purchaser by the producer, royalty owner, or gas plant operator *for which the seller receives a price per unit of volume with respect to natural gas liquids.* (Emphasis supplied.)

Thus, as noted by the trial court, 512 F.Supp. at 825, in the final regulation it was not required that a "price" actually be paid before a transaction could qualify as a "first sale."

The relationship of Subpart K to Subpart E and the refiners was set out in § 212.161 of the Final Regulations:

*Relationship to other Subparts —*

(1) Gas plant operators. Refiners that only refine liquid hydrocarbons from oil and gas field gases and do not refine crude petroleum shall determine their maximum lawful prices pursuant to this Subpart K and are not also subject to Subpart E.

(2) *Crude oil refiners which are also gas plant operators*—(i) *General.* Refiners that refine liquid hydrocarbons from oil and gas field gases, and also refine crude petroleum, shall determine their May 15, 1973 selling prices and increased costs for natural gas liquids and for natural gas liquid products produced in gas plants pursuant to this subpart, but shall determine their maximum lawful selling prices pursuant to Subpart E.

In this appeal, the Department of Energy contends that the conclusion of the District Court conflicts with both the regulatory language, and the basic purposes of the Federal Energy Administration, since, according to Appellants, the regulations, as adopted, contain no provision for first sale transfer pricing between affiliates. This contention, along with the various arguments presented to the trial court, in support of the Department's interpretation of the regulations, are completely untenable in the face of the language found in Subpart K, and its regulatory history.

When the final regulations were adopted in December, 1974, they were expressly made applicable to "all sales including transfers between affiliated entities." No language could be more plain than that. In our recent decision in *Wiggins Brothers, Inc. v. Department of Energy,* et al. (Em. App., 1981) 667 F.2d 77, we had occasion to stress the importance of language appearing in the preamble to the Marginal Property Rule, 10 C.F.R. § 212.72 in connection with determining whether or not an injection well could be counted as a well that produced crude oil. In *Wiggins,* 667 F.2d at 88, we pointed out that "(i)t is well settled by decisions of this Court that the preamble to a regulation of DOE and its predecessors should be considered in construing the regulation and determining the meaning of the regulation."

We believe that the District Court properly found that interaffiliate transfers were entitled to first sale treatment under the provisions of Subpart K. In addition to the language found in the "Scope" section of that subpart, that decision finds support in other provisions of the regulations, such as the definition of "first sale" found at § 212.162, which does not require that a seller actually receive a unit price upon a transfer. Further confirmation of the scope of the regulations is found in other evidence discussed at length by the trial court—such as the language found in the other preamble to the proposed regulations and contemporaneous official language

found in audit manuals and pricing and compliance guides issued by the Department. Furthermore, the interpretation of the District Court is consistent with the expressed intent of the Department in issuing the regulations, that is, to provide a pricing incentive in order to stimulate production of natural gas liquids. As was pointed out by the trial court, it appears that approximately 75% of all the NGL supply in the United States is produced by integrated processors, so that if the price incentives provided by Subpart K were denied to them, the purpose of stimulating production could not have been realized.

For all of the reasons so adequately discussed by the trial court, we are satisfied that the trial court correctly found that Subpart K of the Mandatory Petroleum Price Regulations, as issued on December 19, 1974, and effective January 1, 1975, permitted interaffiliate transfers of natural gas liquids and liquid products to be treated as first sales, and entitled to price incentive adjustments provided in 10 C.F.R. § 212.-164. Since the Department of Energy concedes that the 1978 Amendments to the Regulations will have no retroactive effect, we do not reach the question of the validity of those amendments as an issue in this case. Accordingly,

The judgments of the District Court are AFFIRMED.